# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CATHERINE L. ROBERTSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:09-cv-0398 |
| v. ) | Judge Wiseman / Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Motion for Judgment on the Administrative Record and supporting Memorandum of Law, which the Court will construe as a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Nos. 19 and 20. Plaintiff has filed a Reply. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on February 10, 2004, alleging that she had been disabled since March 5, 2003, due to back and neck pain, dizziness, severe headaches, nausea, balance problems, memory loss, and anxiety. *See, e.g.,* Docket No. 10, Attachment ("TR"), p. 20, 92, 110-117. Plaintiff's application was denied both initially (TR 52) and upon reconsideration (TR 54). Plaintiff subsequently requested (TR 46) and received (TR 35-38) a hearing. Plaintiff's hearing was conducted on January 31, 2007, by Administrative Law Judge ("ALJ") Mack H. Cherry. TR 481-514. Plaintiff and Vocational Expert, Gail Ditmore, appeared and testified. *Id.*

On July 19, 2007, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 15-33. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since March 5, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: vertigo, anxiety, headaches and problems with her neck, shoulder, elbow and back (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work activity.

2

> Specifically, can stand or walk for 6 hours out of 8 hours, sit with a sit/stand with an option for no more than 30 minutes at a time; never climb ladders; occasionally climb stairs and ramps, balance, stoop, bend, kneel, crouch and crawl; avoid vibration and hazardous machinery and unprotected heights. I further find the claimant has moderate limitations in maintaining attention and concentration for extended time, adapting to changes in the work environment and completing a normal workday without interruptions by psychological symptoms and performing at a consistent pace without unreasonable breaks.

6. The claimant can perform prior work as a receptionist and office clerk (20 CFR 404.1565).

7. The claimant was born on June 26, 1964 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 5, 2003 through the date of this decision (20 CFR 404.1520(g)).

TR 20-32.

On July 24, 2007, Plaintiff timely filed a request for review of the hearing decision. TR

12-14. On April 24, 2009, the Appeals Council issued a letter declining to review the case (TR 6-8), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

4

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

5

Case 3:09-cv-00398   Document 22   Filed 06/28/10   Page 5 of 20 PageID #: 121

or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) not according controlling weight to the opinions of Plaintiff's treating otolaryngologist, Dr. Stephen Parey, and Plaintiff's treating psychiatrist, Dr. Earl Parrott; 2) relying on the opinions of osteopathic neurologist Dr. Bruce Rubinowicz and psychologist Dr. James Walker; 3) relying on the opinions of psychological evaluator Robert Doran and State Agency medical consultant Dr. Gina Frieden; and 4) evaluating Plaintiff's credibility. Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

7

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Weight Accorded to the Opinions of Drs. Parey and Parrott

Plaintiff argues that the ALJ should have accorded controlling weight to the opinions of Dr. Parey, Plaintiff's treating otolaryngologist, and Dr. Parrott, Plaintiff's treating psychiatrist. Docket No. 16.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that

> cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>     (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>     (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>     (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>     ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Specifically, Plaintiff argues that the ALJ should have accorded controlling weight to the opinions of Drs. Parey and Parrott because they are "well-supported and not inconsistent with other substantial evidence in the record." Docket No. 16. Plaintiff also argues that the ALJ failed to identify sufficiently specific reasons for the weight he accorded the opinions of Drs.

9

Parey and Parrott. *Id.*

Defendant responds that the ALJ properly weighed the opinions of Drs. Parey and Parrott. Docket No. 20. Specifically, Defendant argues that the ALJ properly accorded no weight to Dr. Parey's March 5, 2004 opinion because it conflicts with other medical records from the same time period, and because Dr. Parey later changed this opinion. *Id.* Defendant also argues that the ALJ properly accorded very little weight to Dr. Parrott's opinion because his opinion conflicts with other evidence in the record, because he did not perform any objective tests in forming his opinion, and because he was not board-certified. *Id.* Defendant further maintains that the ALJ adequately explained his reasons for not according controlling weight to the opinions of Drs. Parey and Parrott. *Id.*

Dr. Parey first examined Plaintiff on March 21, 2003. TR 342. He continued to examine her on numerous occasions until December 28, 2005. TR 344-353. In a March 5, 2004 letter to the State of Tennessee Disability Determination Section, Dr. Parey opined that Plaintiff could not "perform any kind of work" because of vertigo and a balance disorder. TR 342. The ALJ explained that he accorded "no weight . . . to Dr. Parey's statement that the claimant was unable to perform work activity for the time period he gave" because "her behavior at other evaluations, presentations and other treatment records do not corroborate Dr. Parey's statement." *Id.* Specifically, the ALJ found that "reports from other physicians reflect that the claimant was able to function despite her problems with balance, and, while she may not have been able to return to a specific job, their narratives, evaluations and examinations reflect that not all work was eliminated." *Id.* The record also reflects that Dr. Parey changed his opinion after March 5, 2004. *See, e.g.*, TR 411-416. Specifically, on April 27, 2004, Dr. Parey opined that Plaintiff was

10

capable of performing restricted work, noting that she should not perform work involving "moving floors" or machinery. TR 415. On June 24, 2004, January 17, 2005, July 12, 2005, and January 3, 2006, Dr. Parey again opined that Plaintiff was capable of performing some types of work activity. TR 411-416.

The ALJ specifically noted the opinions of Drs. Rubinowicz and Walker in explaining his reasoning for according Dr. Parey's statement no weight. TR 29. Dr. Rubinowicz, an osteopathic neurologist, examined Plaintiff four times from March 7, 2003 to January 8, 2004. TR 158-165. Dr. Rubinowicz performed a neurological examination of Plaintiff on March 7, 2003, and found that Plaintiff's gait and station were normal. TR 165. Dr. Walker, a psychologist to whom Dr. Rubinowicz referred Plaintiff for testing, performed a neuropsychological evaluation of Plaintiff on November 18, 2003. TR 151. As part of this evaluation, Plaintiff reported to Dr. Walker that she was able to do chores around the house, work in her flower bed, shop, manage her finances, and be active in her church. TR 153. Dr. Walker reported that Plaintiff's neuropsychological tests were generally within normal limits, that her head injury was "very mild," and that it was "unlikely to result in any lasting cognitive problems." TR 155.

In discounting Dr. Parey's March 5, 2004 opinion, the ALJ also noted the opinions of psychological examiner Robert Doran and State Agency medical consultant Dr. Gina Frieden. TR 29-30. Mr. Doran, along with supervising clinical psychologist Dr. Mark Phillips, performed a psychological evaluation on August 18, 2004, and diagnosed Plaintiff with an anxiety disorder, not otherwise specified. TR 180. Plaintiff reported to Mr. Doran that she was able to conduct daily tasks such as cleaning the house, working in the garden, cooking meals, and doing laundry.

11

TR 179.

Dr. Frieden conducted a functional capacity assessment of Plaintiff on September 14, 2004. TR 183. In that assessment, Dr. Frieden opined that Plaintiff was capable of performing simple tasks, performing detailed tasks adequately, persisting and concentrating adequately and independently through the workweek, and adapting to routine changes. *Id.* Dr. Frieden further opined that Plaintiff was mildly limited in activities of daily living and maintaining social function, and moderately limited in maintaining concentration, persistence, or pace. TR 194.

Dr. Parrott first examined Plaintiff on March 7, 2003 (TR 517), and he continued to examine her on numerous occasions until August 10, 2006 (TR 398-410). Dr. Parrott diagnosed Plaintiff with an organic depressive disorder causally related to her head injury. TR 518. He opined that this disorder would likely be permanent. *Id.* Dr. Parrott further opined that Plaintiff was unable to maintain regular work attendance and quality. TR 519. The ALJ accorded "very little weight" to the opinion of Dr. Parrott because Dr. Parrott was not board-certified, because he did not base his opinion of Plaintiff's condition on objective test results, and because his opinion conflicts with Dr. Walker's opinion. TR 30. Dr. Walker opined in a November 18, 2003 evaluation that "[t]he head injury [Plaintiff] described was very mild and would be unlikely to result it any lasting cognitive problems." TR 155.

The ALJ also discussed the fact that Dr. Parrott's opinion of Plaintiff's abilities conflicts with the Global Assessment Functioning Level (GAF) he himself assigned Plaintiff. TR 30. Specifically, Dr. Parrott opined that, one month after her work accident, Plaintiff was operating at a GAF of 56. TR 523. A GAF of 56 represents moderate limitations on functioning. TR 22. Despite his finding that Plaintiff's GAF was 56, Dr. Parrott opined that Plaintiff was incapable of

12

maintaining a regular work schedule. TR 519.

Drs. Parey and Parrott treated Plaintiff for an extensive period of time, a fact which would justify the ALJ's giving greater weight to their opinions than to other opinions. As has been noted, however, Dr. Parey's March 5, 2004 statement that Plaintiff could not perform any work activity contradicts other substantial evidence in the record, including Dr. Parey's own subsequent evaluations of Plaintiff. As has also been noted, Dr. Parrott's opinions that Plaintiff had an organic depressive disorder that was likely to be permanent and that Plaintiff was unable to maintain regular work attendance and quality also contradict substantial evidence in the record, including the GAF he assigned her. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* As such, the Regulations do not mandate that the ALJ accord the opinions of Drs. Parey and Parrott controlling weight. Accordingly, Plaintiff's argument fails.

## 2. Weight Accorded to the Opinions of Drs. Rubinowicz and Walker

Plaintiff next argues that the ALJ erred in relying on the opinions of Drs. Rubinowicz and Walker. Docket No. 16. Specifically, Plaintiff argues that the ALJ should not have accorded great weight to the opinions of Drs. Rubinowicz and Walker because they did not treat Plaintiff as extensively as did Drs. Parey and Parrott. *Id.*

Defendant responds that the opinions of Drs. Rubinowicz and Walker should be accorded more weight than that of Dr. Parrott, because Dr. Walker performed numerous objective tests

which Dr. Rubinowicz referenced in his opinion, whereas Dr. Parrott performed no tests on Plaintiff, and was not board-certified. Docket No. 20. Defendant also notes that, although Dr. Parey's March 5, 2004 opinion conflicts with substantial evidence in the record, including the opinions of Drs. Rubinowicz and Walker, Dr. Parey's later opinion of Plaintiff's abilities is compatible with the jobs identified by the Vocational Expert. *Id.*

When the opinion of a treating source is not given controlling weight, the ALJ uses a set of factors in deciding how much weight to give all medical opinions in the record. *See* 20 C.F.R. § 416.927(d) and 20 C.F.R. § 404.1527(d). These factors are, 1) whether the source of the opinion has an examining relationship with the plaintiff; 2) whether the source of the opinion has a treatment relationship with the plaintiff, and if so, the nature, extent, and length of the treatment relationship, and the frequency of examination; 3) the supportability of the opinion; 4) the consistency of opinion with the record as whole; 5) whether the source of the opinion is a specialist opining about an area related to his specialty; and 6) other factors. *Id.* As previously discussed, the March 5, 2004 opinion of treating otolaryngologist Dr. Parey and the opinion of treating psychiatrist Dr. Parrott contradict substantial evidence in the record, and thus were not controlling in the ALJ's decision.

Since the March 5, 2004 opinion of Dr. Parey and the opinion of Dr. Parrott were not controlling in the ALJ's decision, the ALJ used the factors set forth in the Regulations to weigh the medical evidence in the record. The ALJ accorded "great weight" to the opinions of Drs. Rubinowicz and Walker. TR 29. The ALJ's discussion of the opinions of Drs. Rubinowicz and Walker notes that both had an examining relationship with Plaintiff. *Id.* The ALJ also relied on the supportability factor in according great weight to their opinions, explaining that he weighed

Dr. Walker's opinion heavily because "his opinion is based upon objective testing as well as his own evaluation." TR 30. Dr. Walker administered twenty-four tests in his neuropsychological evaluation of Plaintiff. TR 153. Dr. Rubinowicz relied on Dr. Walker's neuropsychological evaluation in forming his January 8, 2004 opinion that Plaintiff had no "profound primary issues related to head injury" and that Plaintiff was able to return to work. TR 158-159. The ALJ, in according very little weight to the opinion of Dr. Parrott, noted that his opinion "is not based upon tests results as those performed by Dr. Walker." TR 30.

Plaintiff is correct in asserting that Drs. Parey and Parrott treated Plaintiff more extensively than did Drs. Rubinowicz and Walker. Drs. Parey and Parrott each examined Plaintiff numerous times (TR 342-353, 398-410), while Dr. Rubinowicz examined her four times (158-165) and Dr. Walker examined her once (151-56). Plaintiff is also correct in stating that the opinion of a treating source is generally accorded more weight than a non-treating source. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). When the opinions of treating sources are contradicted by substantial evidence in the record, however, as in the instant case, the opinions of those treating sources do not control, and the ALJ weighs medical evidence using the factors set forth above. *See* 20 C.F.R. § 416.927(d) and 20 C.F.R. § 404.1527(d). The ALJ used these factors in evaluating the medical evidence in the record in this case. Thus, the ALJ properly evaluated the medical opinions in the record; Plaintiff's argument fails.

### 3. Weight Accorded to the Opinions of Mr. Doran and Dr. Frieden

Plaintiff next argues that the ALJ erred in according significant weight to the opinions of psychological evaluator Robert Doran and State Agency medical consultant Dr. Gina Frieden. Docket No. 16. Specifically, Plaintiff argues that the ALJ should have accorded greater weight

15

to the opinion of Dr. Parrott than to the opinions of Mr. Doran and Dr. Frieden because Dr. Parrott was a treating physician, while Mr. Doran and Dr. Frieden each examined Plaintiff once. *Id.*

Defendant responds that the ALJ properly accorded greater weight to the opinions of Mr. Doran and Dr. Frieden than to Dr. Parrott because Dr. Parrott's opinion is inconsistent with significant evidence in the record, whereas the opinions of Mr. Doran and Dr. Frieden are corroborated by other evidence in the record. Docket No. 20.

As previously noted, Mr. Doran found at an August 18, 2004 evaluation that Plaintiff was capable of performing activities of daily living (TR 179-180), and Dr. Frieden found at a September 14, 2004 evaluation that Plaintiff had some mild and moderate limitations, but was capable of performing simple tasks, performing detailed tasks adequately, persisting and concentrating adequately and independently through the workweek, and adapting to routine changes (TR 183, 194). The ALJ gave "significant weight" to these opinions, which are consistent with other evidence in the record, including the opinions of Drs. Rubinowicz and Walker. TR 30. On January 8, 2004, Dr. Rubinowicz opined that "[t]he results of her neuropsychiatric evaluation" performed by Dr. Walker "do not appear to exhibit any profound primary issues related to head injury." TR 158. Dr. Rubinowicz also noted that he did not think Plaintiff could continue to be off work as a result of her initial head injury. *Id.* Dr. Walker reported that the results of Plaintiff's neuropsychological tests were generally within normal limits, that her head injury was "very mild" and that it was "unlikely to result in any lasting cognitive problems." TR 155.

Because the opinion of Dr. Parrott contradicts substantial evidence in the record, as has

been discussed, the ALJ did not accord it controlling weight. *See* 20 C.F.R. § 416.927(d) and 20 C.F.R. § 404.1527(d). After weighing the medical evidence of record, the ALJ properly accorded more weight to the opinions of Mr. Doran and Dr. Frieden than to the opinion of Dr. Parrott. Plaintiff's argument fails.

### 4. Plaintiff's Credibility

Plaintiff finally argues that the ALJ improperly evaluated the credibility of Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms. Docket No. 16. Specifically, Plaintiff argues that the ALJ's finding that Plaintiff's statements regarding her symptoms were not entirely credible is not supported by substantial evidence in the record, and that the ALJ did not articulate sufficiently specific reasons for his finding on Plaintiff's credibility. *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's credibility in finding that, because Plaintiff's symptoms did not interfere with her activities of daily living, her statements regarding the intensity, persistence, and limiting effects of her symptoms could not be entirely credible. Docket No. 20.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations about his or her symptoms:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

17

Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

When analyzing the claimant's subjective complaints about his or her symptoms, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's symptoms; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints about his or her symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to result in the symptoms she described, but that her allegations about the intensity, persistence, and limiting effects of these symptoms were not entirely credible. TR 28. The ALJ noted Plaintiff's allegations of her symptoms (TR 27): problems with her back, pain, dizziness, stress, anxiety, depression, severe headaches several times a week, minor headaches daily, nausea, and trouble concentrating (TR 117, 488-493). In evaluating the

18

credibility of Plaintiff's testimony about her symptoms, the ALJ considered her daily activities:

> [T]he claimant tends to her children, one of which is disabled, she lives on several acres of land and has over 100 animals. She is active in her church activities and is able to drive for short distances, shop and perform household chores. The clamant [*sic*] does not have a handicap permit and she also related she traveled to Michigan, her original home.

TR 31.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible because she was able to conduct a range of daily activities inconsistent with her allegations. TR 28. As has been noted, this determination is within the ALJ's province.

19

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge